

# UNITED STATES DISTRCT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

2017 MAY 18 PM 1:23

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

**JOYCE FUDGE WILLIAMS**
Individually and on behalf of a
class of persons similarly situated,

      Plaintiff,

vs.

**NEW PENN FINANCIAL, LLC,**
**D/B/A SHELLPOINT MORTGAGE**
**SERVICING, INC.,**

      Defendant.

_____/

Case No.: 3:17-CV-570-J-34 JRK

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff, **JOYCE FUDGE WILLIAMS**, (hereinafter referred to as "Ms. Williams" or Plaintiff), by and through undersigned counsel, and sues Defendant, **NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING, INC.,** hereinafter referred to as "Shellpoint Mortgage" or Defendant), and alleges:

## JURISDICTION AND VENUE

1.    This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2201 and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") This Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 (b), 15 U.S.C. § 1692k, 28 U.S.C. §§ 2201-2201 (d) and 28 U.S.C. § 1334 (b).

1

2.     Venue is proper pursuant to 28 U.S.C. § 1391 since Plaintiff resides in this District and the conduct complained of occurred in this District.

PARTIES

3.     Plaintiff is a natural person and a resident of Duval County, Florida.  At all times material hereto, Plaintiff was a "debtor" or "consumer" as defined by Fla. Stat. § 559.55(2) and 15 U.S.C. § 1692a (3) and a "person" as defined by 47 U.S.C. §153(39).  Plaintiff has standing to bring a claim under the FDCPA, the FCCPA, the Declaratory Judgment Act and TCPA because she was directly affected by violations of these Acts, and was subjected to Defendant's illegal and improper debt collection activities.

4.     Defendant, New Penn Financial, LLC, is a mortgage loan servicer based in Plymouth Meeting, Pennsylvania. Shellpoint Mortgage Servicing, Inc., is an operating division of New Penn Financial, LLC, with its main office in Greenville, South Carolina. Defendant markets to lenders that it is uniquely equipped to manage the heightened requirements of servicing loans in default and in bankruptcy. Defendant regularly conducts business in Jacksonville, Duval County, Florida.

**COUNT I: FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)**

5.     This is an action seeking class wide relief for violation of the FDCPA to recover actual damages in the form of money paid by Plaintiff and all those similarly situated to Defendant pursuant to a non-existent debt, for statutory damages under 15 U.S.C.A. § 1692k(a)(2)(B) and attorney's fees and the  costs of this action under 15 U.S.C.A. § 1692k(a)(3).

6.     On or about November 19, 2007, Plaintiff executed and delivered a promissory note to Amnet Mortgage Inc., DBA American Mortgage Network of Florida, for personal, family, or

2

household services, specifically a mortgage loan on her home at 8428 McGirts Village, Jacksonville, Florida 32210. That same day, Plaintiff executed a purchase money mortgage securing payment to Mortgage Electronic Registration Systems, 'nc., as nominee for Ament Mortgage. In due course, the Mortgage was assigned to the Federal National Mortgage Association. ("FNMA"). The mortgage loan was serviced by Seretus, who monthly corresponded with Ms. Williams by U.S. Mail by means of a periodic mortgage statement.

7.     On November 4, 2011, Ms. Williams filed a voluntary petition for protection from creditors under Chapter 7 of the United States Bankruptcy Code. [Case No. 3:11-bk-08126-PMG Doc. #1]. On November 4, 2012, a notice of appearance and request for notice was filed by Antonio Alonso on behalf of creditor Seterus, Inc., as mortgage servicing company for Federal National Mortgage Association. [Id. Doc. #27].

8.     The Bankruptcy Code recognizes the vulnerabilities of debtors and implements a strict procedure for reaffirmations of debt by debtors under 11 U.S.C. § 524 (c). This statute requires public and timely filing of all reaffirmation agreements, that the debtor be given written disclosures and provides the debtor an opportunity to rescind the reaffirmation agreement. All of these protections are designed to make sure a debtor does not forfeit the fresh start protections available under the U.S. Bankruptcy Code.

9.     As required under the U.S. Bankruptcy Code, and provided in Debtor's Intent to Surrender Real Property, Ms. Williams stated that she would not reaffirm the mortgage to FNMA and would relinquish her home located at 8428 McGirts Village Lane, Jacksonville, Florida 32210.

10.     No reaffirmation agreement was ever exchanged, agreed to or filed with the Bankruptcy Court with respect to the subject mortgage between Plaintiff and FNMA., the holder

3

of the mortgage note, or its mortgage servicing company agents, Seterus, Inc., or Defendant

Shellpoint Mortgage Servicing, a division of New Penn Financial, LLC.

11.     On April 2, 2012, the mortgage loan servicing company Seterus filed its Motion

for Relief from the Automatic Stay and sought leave to foreclose the mortgage on the Plaintiff's

home located at 8428 Mcgirts Village Lane, Jacksonville, Florida 32210. [Case No. 3:11-Bk-

08126-PMG Doc. #28]. As an exhibit to its Motion, counsel for the mortgage loan servicer

Seterus, Inc., filed an affidavit stating under oath that Ms. Williams intended to surrender her

home. [Id. Doc. 28-3]. In due course, the Bankruptcy Court entered its Order granting relief from

the automatic stay. [Id. Doc. #32]. ]

12.     On April 5, 2012, the U.S. Bankruptcy Court entered its Discharge of Debtor.

[Id. Doc. #29].  Seterus, Inc., the mortgage servicing agent for Federal National Mortgage

Association, was provided notice of the Discharge by the Clerk of Court by U.S. Mail to its

agent's offices located at 14523 SW Millikan Way, Beaverton, OR 97005-2352; and to its

attorney of record. [Id. Doc. # 30 Page 1]. In addition, notice of the Discharge was

provided by email to its corporate attorneys, antonio.alonso@marshallwatson.com;

jario.garcia@marshallwatson.com; and BKMailfromCourt@MarshallWatson.com *(Exhibit*

*"A")*. The Order of Discharge provided notice to the creditor, Federal National Mortgage

Association, and its agent, that the note and underlying debt secured by the subject mortgage

was not collectable.  Pursuant to the Chapter 7 bankruptcy discharge order, Plaintiff was fully

released from any and all personal monetary liabilities on the subject loan.

13.     On September 6, 2013, Federal National Mortgage Association filed its verified

complaint to foreclose on Ms. Williams' home in the Circuit Court of the Fourth Judicial Circuit,

in and for Jacksonville, Duval County, Florida. [Case No. 16-2013-CA-008235-XXXX-MA Doc. #4].

14.     On or about May 16, 2016, Ms. Williams' mortgage and note was transferred from Seterus, Inc., to Defendant Shellpoint Mortgage Servicing, a division of New Penn Financial, LLC, for servicing.

15.     Defendant New Penn Financial, LLC, through its division, Shellpoint Mortgage Servicing, Inc., sent communications to Plaintiff, Ms. Williams, in an effort to collect a debt, notwithstanding the U.S. Bankruptcy Court's Order of Discharge. On May 20, 2016, Shellpoint Mortgage Servicing, Inc., provided Ms. Williams with a letter of assignment together with a payment coupon which listed, among other things, a "First Payment Due Date"; "Monthly Payment Amount of $663.95" and the "Amount Enclosed." *(Exhibit "B")*. The statement states that "mortgages can seem complex". It also stated that Ms. Williams should "[f]eel free to use the payment coupon below to send us your first payment. We offer several easy payment options, including: Free ACH, Online Account Payment, Phone (either with our IVR system or live agent)." The payment coupon was to be detached and returned to Defendant by U.S. Mail with payment. It provided instructions on how to make a payment and directions on setting up automatic payments. The back of the Statement contained various statements about payments, options, insurance and property taxes. The back of the Statement also contained a disclaimer pertinent to the case. The disclaimer stated:

> If you are a customer in bankruptcy or a consumer who has received a bankruptcy Discharge of the debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

16.   The debt demand communication was followed by telephone calls from debt collectors employed by Shellpoint Mortgage Servicing, Inc., to Ms. Williams' cell phone, in an effort to collect a debt. The debt collectors' telephone number was identified by caller ID as 1-832-775-7633. The debt collectors called Ms. Williams' cell phone on May 23, 2016, on two occasions at 12:35 p.m. and 1:05 p.m.; on May 24, 2016 at 4:32 p.m.; May 25, 2016 at 11:44 a.m., ["Oscar"]; June 6, 2016 at 3:40 p.m. ["Crystal Trotter']; June 23, 2016; June 28, 2016 at 9:50 a.m. ["Katrina"]; July 1, 2016 and July 14, 2016 ["Katrina"], all in an effort to collect a debt.   Ms. Williams repeatedly instructed the collectors to stop calling her and provided her attorney's contact information.

17.   On June 7, 2016, the Circuit Court entered a Final Judgment of Foreclosure and scheduled a sale date of October 5, 2016. [Id. Doc. #52]. At the judicial sale, the highest bidder was the National Federal Mortgage Association.

18.   On July 22, 2016, by correspondence, the defendant gave notice to Plaintiff that it intended to commence foreclosure on her home mortgage loan. The correspondence cited the loan number, the principal balance of the loan, and the street address of the real property. Defendant also stated that it may seek a deficiency judgment against Ms. Williams if there were insufficient proceeds from the foreclosure sale. *[Exhibit "C"]*. The back of the Statement also contained a disclaimer pertinent to the case. The disclaimer stated:

If you are a customer in bankruptcy or a consumer who has received a bankruptcy Discharge of the debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a          notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

19.     In the case at bar, this Defendant attempted to collect on a debt that was not owed and had been discharged under 11 U.S.C.A. § 727 of the Bankruptcy Code. As Judge Posner stated: "Dunning people for their discharged debts would undermine the 'fresh start' rationale of bankruptcy and is prohibited by the [FDCPA] which … prohibits a debt collector from making a 'false representation of the character, amount, or legal status of any debt.' "

20.     The Defendant has no legal right to collect any amount from the Plaintiff.

21.     At all material times herein, Plaintiff's debt and the debt of others similarly situated were consumer debts as defined by the FDCPA, 15 U.S.C.A. § 1692a(5).

22.     At all material times herein, Plaintiff and others similarly situated were "consumers" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

23.     At all material times herein, Defendant was a "debt collector" as defined by the 15 U.S.C.A. § 1692a (6). Defendant acquired its status as a "debt collector" after the subject debt had been discharged by the U.S. Bankruptcy Court.

24.     At all material times herein, Defendant knew or should have known that the debt they were attempting to or did collect from the Plaintiff and the Class Members had been discharged.

25.     The correspondence sent by Defendant to Ms. Williams is a "communication" as that term is defined by 15 U.S.C. § 1692a (2).

26.     By billing Plaintiff and others similarly situated, Defendant attempted to collect a debt which had been discharged. Defendant's communications that asserted Ms. Williams owed a debt based on the mortgage loan, including a notice of intent to foreclose, monthly mortgage statements, a loan modification package, and a delinquent tax notice violates 15 U.S.C. § 1692e,

7

which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt.

27.     In addition, Defendant's above mentioned collection activities falsely represented/represent the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e (2) (A).

28.     As a direct and proximate result of Defendant's FDCPA violations, Plaintiff and others similarly situated have been harmed.  Plaintiff, and others similarly situated, are entitled to actual damages in the amount of money paid to Defendant pursuant to these extinguished debts, statutory damages under 15 U.S.C. § 1692k(a)(2)(B) and attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1692k(a)(3).

29.     For the purpose of the claims brought in this action, the applicable standard under the FDCPA is "the least sophisticated" consumer test.  See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985).  The manner in which Defendant chose to present the inconsistent information on the front and back of the letter is misleading to "the least sophisticated" consumer.

30.     This is an action seeking class wide relief for Defendant's pattern and practice of pursuing the collection of discharged debts from the Plaintiff and the Class Members.

31.     Because Defendant's actions were intentional, willful and/or without regard for Plaintiff's rights, Plaintiff reserves the right to seek punitive damages upon the showing on the records of evidence sufficient to form the basis of a claim for punitive damages.

## COUNT II – VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT ("FCCPA")

32.     This is a claim for violation of the Florida Consumer Collection Practices Act F.S. 559.55 et seq.

8

33.     On or about November 19, 2007, Plaintiff executed and delivered a promissory note to Amnet Mortgage Inc., DBA American Mortgage Network of Florida, for personal, family, or household services, specifically a mortgage loan on her home at 8428 McGirts Village, Jacksonville, Florida 32210. That same day, Plaintiff executed a purchase money mortgage securing payment to Mortgage Electronic Registration Systems, Inc., as nominee for Ament Mortgage. In due course, the Mortgage was assigned to the Federal National Mortgage Association. ("FNMA").

34.     On November 4, 2011, Ms. Williams filed a voluntary petition for protection from creditors under Chapter 7 of the United States Bankruptcy Code. [Case No. 3:11-bk-08126-PMG Doc. #1]. On November 4, 2012, a notice of appearance and request for notice was filed by Antonio Alonso on behalf of creditor Seterus, Inc., as mortgage servicing company for Federal National Mortgage Association. [Id. Doc. #27].

35.     The Bankruptcy Code recognizes the vulnerabilities of debtors and implements a strict procedure for reaffirmations of debt by debtors under 11 U.S.C. § 524 (c) which requires public and timely filing of the agreement, that the debtor be given written disclosures and provides the debtor an opportunity to rescind the reaffirmation agreement. All of these protections are designed to make sure a debtor does not forfeit the fresh start protections available under the U.S. Bankruptcy Code.

36.     Unfortunately, during this period of time, Ms. Williams' income diminished while her cost of living increased. Therefore, as required under the U.S. Bankruptcy Code, and provided in Debtor's Intent to Surrender Real Property, Ms. Williams stated that she would not reaffirm the Federal National Mortgage Association debt and would relinquish her home located at 8428 McGirts Village Lane, Jacksonville, Florida 32210 to its creditor.

37.     No reaffirmation agreement was ever exchanged, agreed to or filed with the Bankruptcy Court with respect to the subject mortgage between Plaintiff and F.N.M.A., the holder of the mortgage note, or its mortgage servicing company agents, Seterus, Inc., or Defendant Shellpoint Mortgage Servicing, a division of New Penn Financial, LLC.

38.     On April 2, 2012, the mortgage loan servicing company Seterus filed its Motion for Relief from the Automatic Stay and sought leave to foreclose the mortgage on the Plaintiff's home located at 8428 Mcgirts Village Lane, Jacksonville, Florida 32210. [Case No. 3:11-Bk-08126-PMG Doc. #28]. As an exhibit to its Motion, counsel for the mortgage loan servicer Seterus, Inc., filed an affidavit stating under oath that Ms. Williams intended to surrender her home. [Id. Doc. 28-3]. In due course, the Bankruptcy Court entered its Order granting relief from the automatic stay. [Id. Doc. #32].

39.     On April 5, 2012, the U.S. Bankruptcy Court entered its Discharge of Debtor. [Id. Doc. #29]. Seterus, Inc., the mortgage servicing agent for Federal National Mortgage Association, was provided notice of the Discharge by the Clerk of Court by U.S. Mail to the agent's offices located at 14523 SW Millikan Way, Beaverton, OR 97005-2352; to its attorney of record. [Id. Doc. # 30 Page 1] and in addition, by email to its corporate attorneys, antonio.alonso@marshallwatson.com; jario.garcia@marshallwatson.com; and BKMailfrom Court@MarshallWatson.com *(Exhibit "A")*. The Order of Discharge provided notice to the creditor, Federal National Mortgage Association, and its agent, that the note and underlying debt secured by the subject mortgage was not collectable.  Pursuant to the Chapter 7 bankruptcy discharge order, Plaintiff was fully released from any and all personal monetary liabilities on the subject loan.

40.    On September 6, 2013, Federal National Mortgage Association filed its verified

complaint to foreclose on Ms. Williams' home in the Circuit Court of the Fourth Judicial Circuit,

in and for Jacksonville, Duval County, Florida. [Case No. 16-2013-CA-008235-XXXX-MA

Doc. #4].

41.    On or about May 16, 2016, Ms. Williams' mortgage and note was transferred

from Seterus, Inc., to Defendant Shellpoint Mortgage Servicing, a division of New Penn

Financial, LLC, for servicing.

42.    Defendant New Penn Financial, LLC, through its division, Shellpoint Mortgage

Servicing, Inc., commencing communicating with Plaintiff, Ms. Williams, in an effort to collect

a debt, notwithstanding the U.S. Bankruptcy Court's Order of Discharge. On May 20, 2016,

Shellpoint Mortgage Servicing, Inc., provided Ms. Williams with a letter of assignment together

with a payment coupon which listed, among other things, a "First Payment Due Date"; "Monthly

Payment Amount of $663.95" and the "Amount Enclosed." *(Exhibit "B")*. The statement states

that "mortgages can seem complex". It also stated that Ms. Williams should "[f]eel free to use

the payment coupon below to send us your first payment. We offer several easy payment

options, including: Free ACH, Online Account Payment, Phone (either with our IVR system or

live agent)." The payment coupon was to be detached and returned to Defendant by U.S. Mail

with payment. It provided instructions on how to make a payment and directions on setting up

automatic payments. The back of the Statement contained various statements about payments,

options, insurance and property taxes. The back of the Statement also contained a disclaimer

pertinent to the case. The disclaimer stated:

> If you are a customer in bankruptcy or a consumer who has received a bankruptcy
> Discharge of the debt: please be advised that this notice is to advise you of the status of your
> mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal
> liability to any recipient hereof, who might have received a discharge of such debt in accordance

with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

43.     The debt demand communication was followed by telephone calls from debt collectors employed by Shellpoint Mortgage Servicing, Inc., to Ms. Williams' cell phone, in an effort to collect a debt. The debt collectors' telephone number was identified by caller ID as 1-832-775-7633. The debt collectors called Ms. Williams' cell phone on May 23, 2016, on two occasions at 12:35 p.m. and 1:05 p.m.; on May 24, 2016 at 4:32 p.m.; May 25, 2016 at 11:44 a.m., ["Oscar"]; June 6, 2016 at 3:40 p.m. ["Crystal Trotter']; June 23, 2016; June 28, 2016 at 9:50 a.m. ["Katrina"]; July 1, 2016 and July 14, 2016 ["Katrina"], all in an effort to collect a debt.   Ms. Williams repeatedly instructed the collectors to stop calling her and provided her attorney's contact information.

44.     On June 7, 2016, the Circuit Court entered a Final Judgment of Foreclosure and scheduled a sale date of October 5, 2016. [Id. Doc. #52]. The highest bidder at the judicial sale was the National Federal Mortgage Association.

45.     On July 22, 2016, by correspondence, the defendant gave notice to Plaintiff that it intended to commence foreclosure on her home mortgage loan. The correspondence cited the loan number, the principal balance of the loan, and the street address of the real property. Defendant also stated that it may seek a deficiency judgment against Ms. Williams if there were insufficient proceeds from the foreclosure sale *(Exhibit "C")*. The back of the Statement also contained a disclaimer pertinent to the case. The disclaimer stated:

If you are a customer in bankruptcy or a consumer who has received a bankruptcy Discharge of the debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

46. At all times material to this complaint, Defendant was a "debt collector" as defined under Fla. Stat. § 559.55(6), since the debts at issue were all in default at the time Defendant acquired and/or began servicing them. At all times material herein, Plaintiff and others similarly situated were "debtors" as defined by Fla. Stat. § 559.55(2).\At all times material herein, Plaintiff's debt and the debt of others similarly situated were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(1).

47. The FCCPA, section 559.72(9) provides:

In collecting consumer debts, no person shall:

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

Fla. Stat. § 559.72(9) (emphasis added).

48. The billing letters sent to Plaintiff and others similarly situated by Defendant were an attempt to collect a debt.

49. However, Defendant had no legal right to seek collection of any amounts from Plaintiff and others similarly situated, and was in fact enjoined from doing so pursuant to the bankruptcy discharges of the subject amounts.

50. By attempting to collect debts previously discharged in bankruptcy, Defendant violated Fla. Stat. § 559.72(9) by claiming and attempting to enforce a debt which was not legitimate and not due and owing.

13

51.     As a direct and proximate result of Defendant's FCCPA violations, Plaintiff and others similarly situated have been harmed.  Plaintiff and the Class are entitled to actual damages, statutory damages and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

### COUNT III –THE DECLARATORY JUDGMENT ACT 28 U.S.C. §§ 2201-2201

52.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2201, offers a unique mechanism by which a party may seek to remedy ongoing violations of statutory provisions and to prevent ongoing harm in form of declaratory and injunctive relief.

53.     Specifically, the Declaratory Judgment Act reads:

In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. 28 U.S.C. §§ 2201-2201.

54.     Plaintiff took out a loan from Amnet Mortgage, Inc., for personal, family, or household services, specifically a mortgage loan on her home at 8428 McGirts Village Lane, Jacksonville, Florida 32210.

55.     Ms. Williams filed for Chapter 7 Bankruptcy in 2011.

56.     The Bankruptcy Code recognizes the vulnerabilities of debtors and implements a strict procedure for reaffirmations of debt by debtors under 11 U.S.C. § 524 (c) which requires public and timely filing of the agreement, that the debtor be given written disclosures and

provides the debtor an opportunity to rescind the reaffirmation agreement. All of these protections are designed to make sure a debtor does not forfeit the fresh start provided by a bankruptcy.

57.     No reaffirmation agreement was ever exchanged, agreed to or filed with the Bankruptcy Court with respect to the subject mortgage as between Plaintiff and FNMA as the mortgage holder or its mortgage servicing agent, Shellpoint Mortgage.

58.     On April 5, 2012, the U.S. Bankruptcy Court entered its Discharge of Debtor and the note and underlying debt secured by the subject mortgage became uncollectable. Citicorp Trust Bank was notified via mail of the status of the debt by the Jacksonville Division Middle District Clerk of Court. *(Exhibit "A")*. Pursuant to the Chapter 7 bankruptcy discharge order, Plaintiff was fully released from any and all personal monetary liabilities on the subject loan.

59.     Sometime thereafter, the debt was transferred or assigned to the Defendant for servicing.

60.     Frequently lenders and mortgage servicers abuse the debtors' vulnerability after the discharge and ignore the bankruptcy code requirements and the discharge injunction by continuing to communicate with the debtor. The most vulnerable of debtors are typically the ones, such as Ms. Williams, who continued to reside in her home because the mortgage lender had not yet foreclosed on the house. The lender and servicer convey to the debtor they can remain in their home and stall or foreclosure and eviction from the home. Given the state of mind and financial limitations of the debtor, homeowners are frequently thrilled at the prospect of any potential to remain in their home. That is precisely what Defendant did to Ms. Williams in

15

the instant case. To wit, Defendant communicated orally and in writing that Plaintiff should continue to pay money on the discharged debt so that she could live in the house.

61.     Many of these communications clearly asserted that Ms. Williams owed a debt based on the mortgage loan, and were sent directly to Plaintiff at her home and not to her attorney of record. The communications cannot be construed as mere attempts to enforce the mortgage holders *in rem* rights to foreclose.

62.     The Defendant has no legal right to collect any amount from the Plaintiff.

63.     There is an actual controversy within the jurisdiction of this Court regarding whether Defendant's conduct in sending written communications which seek to collect money on a debt which was discharged in Bankruptcy violates the discharge order in the debtor's bankruptcy case, the FDCPA, and the FCCPA. The parties are in need of a declaration of their rights and responsibilities under Federal and Florida state law.

64.     Plaintiff believes that Defendant has sought payment for debts previously discharged in bankruptcy in circumvention of existing federal court orders of bankruptcy courts, the FDCPA, and the FCCPA.

65.     Defendant's conduct as described herein should be declared to be unlawful and improper.

66.     Defendant should be enjoined from sending billing letters requesting payments for debts previously discharged in bankruptcy.

67.     Defendant should be forced to disgorge all ill-gotten gains collected from consumers as a result of its unlawful conduct.

## COUNT IV- VIOLATION OF THE TCPA

68.     This is a claim for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") by Defendant.

69.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices - for example, computerized calls to private homes. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. *See Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

70.     Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

71.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

72.     In 2003, the FCC held that predictive dialers like the one used by defendant constitute an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R. 14014, 14115, ¶ 131 (July 3, 2003).

73.     The FCC also held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

74.     Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

75.     On or about November 19, 2007, Plaintiff executed and delivered a promissory note to Amnet Mortgage Inc., DBA American Mortgage Network of Florida, for personal, family, or household services, specifically a mortgage loan on her home at 8428 McGirts Village, Jacksonville, Florida 32210. That same day, Plaintiff executed a purchase money mortgage securing payment to Mortgage Electronic Registration Systems, Inc., as nominee for Ament Mortgage. In due course, the Mortgage was assigned to the Federal National Mortgage Association. ("FNMA").

76.     On November 4, 2011, Ms. Williams filed a voluntary petition for protection from creditors under Chapter 7 of the United States Bankruptcy Code. [Case No. 3:11-bk-08126-PMG Doc. #1].]. As provided in Debtor's Intent to Surrender Real Property, Ms. Williams stated that she would not reaffirm the Federal National Mortgage Association debt and would relinquish her home located at 8428 McGirts Village Lane, Jacksonville, Florida 32210 to its creditor. On April 5, 2012, the U.S. Bankruptcy Court entered its Discharge of Debtor. [Id. Doc. #29.

77.     Defendant New Penn Financial, LLC, through its division, Shellpoint Mortgage Servicing, Inc., commenced communicating with Plaintiff, Ms. Williams, in an effort to collect a debt, notwithstanding the U.S. Bankruptcy Court's Order of Discharge. On May 20, 2016, Shellpoint Mortgage Servicing, Inc., provided Ms. Williams with a letter of assignment together with a payment coupon which listed, among other things, a "First Payment Due Date"; "Monthly Payment Amount of $663.95" and the "Amount Enclosed." *(Exhibit "B")*. The statement states that "mortgages can seem complex". It also stated that Ms. Williams should "[f]eel free to use the payment coupon below to send us your first payment. We offer several easy payment options, including: Free ACH, Online Account Payment, Phone (either with our IVR system or live agent)." The payment coupon was to be detached and returned to Defendant by U.S. Mail with payment. It provided instructions on how to make a payment and directions on setting up automatic payments. The back of the Statement contained various statements about payments, options, insurance and property taxes. The back of the Statement also contained a disclaimer pertinent to the case. The disclaimer stated:

If you are a customer in bankruptcy or a consumer who has received a bankruptcy Discharge of the debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

78.     The debt demand communication was followed by telephone calls from debt collectors employed by Shellpoint Mortgage Servicing, Inc., to Ms. Williams' cell phone, in an effort to collect a debt. The debt collectors' telephone number was identified by caller ID as 1-832-775-7633. The debt collectors called Ms. Williams' cell phone on May 23, 2016, on two occasions at 12:35 p.m. and 1:05 p.m.; on May 24, 2016 at 4:32 p.m.; May 25, 2016 at 11:44 a.m., ["Oscar"]; June 6, 2016 at 3:40 p.m. ["Crystal Trotter']; June 23, 2016; June 28, 2016 at 9:50 a.m.

["Katrina"]; July 1, 2016 and July 14, 2016 ["Katrina"], all in an effort to collect a debt.   Ms.

Williams repeatedly instructed the collectors to stop calling her and provided her attorney's

contact information.   In addition to her oral revocation, the consent to telephone Ms. Williams

regarding the debt had been revoked via her bankruptcy discharge.

79.   The telephone call from Defendant to Plaintiff's cellular telephone number was

made using an ATDS.

80.   The subject calls were placed using a predictive dialer.

81.   Defendant, or its agents, placed calls to Plaintiff at a telephone number assigned

to a cellular telephone service.

82.   The telephone calls Defendant placed to Plaintiff were not placed for emergency

purposes, as defined by TCPA § 227 (b)(1)(A)(i).

83.   Defendant made unsolicited telephone calls to the wireless telephone number of

each plaintiff and the other members of the class using a pre-recorded voice and/or using

equipment that had the capacity to store or produce telephone numbers to be called, using a

random or sequential number generator.

84.   At the time Defendant placed the phone calls alleged herein, Defendant did not

have consent to do so.

85.   Defendant has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which

makes it unlawful for any person within the United States "... to make any call (other than a call

made for emergency purposes or made with the prior express consent of the called party) using

any automatic telephone dialing system or an artificial or prerecorded voice ... ".

86.     As a result of Defendant's illegal conduct, the members of the class suffered actual damages and, under § 227(b)(3)(B), and are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

87.     Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Defendant's violations of the TCPA in the future.

88.     Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, diminish cellular battery life, and waste data storage capacity.

## CLASS ALLEGATIONS

89.     Plaintiff brings the FDCPA and FCCPA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and a class defined as all Florida consumers who (a) had or have a residential mortgage loan serviced by Defendant which Defendant acquired when in default; (b) received a Chapter 7 discharge of the mortgage debt; (c) were sent a billing letter in substantially the same form as the Mortgage Statements found in composite B *(Exhibit "B")* by Defendant referencing a mortgage debt discharged in Bankruptcy. A subclass of individuals within the applicable statutes of limitations for each claim is also appropriate.

90.     Plaintiff brings the TCPA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and a class defined as: (a) All persons in the United States (b) to whose cellular telephone number (c) Defendant placed a non-emergency telephone call (d) using an automatic telephone dialing system or an artificial or prerecorded voice (e)

21

within 4 years of the complaint (f) where Defendant did not have express consent to call said cellular telephone number OR where consent had been revoked for any such calls.

91.     The FDCPA and FCCPA class is so numerous that joinder of all members is impractical.  Defendant routinely uses a form document attached hereto as the Mortgage Billing Statement found in composite *(Exhibit "B")* during the course of its collection on delinquent debts.  Defendant uses the same form letter in connection with its collection efforts in hundreds if not thousands of instances.   Given the percentage of consumers who filed for Bankruptcy during the appropriate time frame, it is reasonable to presume that there are hundreds of class members.

92.     Plaintiff does not know the exact number of members in the TCPA Class, but based upon the size and national scope of Defendant's business, Plaintiff reasonably believes that the class members' number at a minimum is in the thousands based on the use of software to make the debt collection calls.

93.     There are questions of law and fact common to the FDCPA and FCCPA class, which questions predominate over any questions affecting only individual members.  The principal issues raised  by this claim are whether Defendant's letter violates the FDCPA, the FCCPA, and the common language of the debtor's bankruptcy discharge injunction.

94.     There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members.  Those common questions of law and fact include, but are not limited to:

        a.   Whether Defendant engaged in a pattern of using an ATDS to place calls to cellular telephones;

        b.   Whether Defendant's dialer delivers pre-recorded messages to cellular telephones;

      c.  Whether Defendant's conduct was knowing or willful;

      d.  Whether Defendant's actions violated the TCPA;

95.    As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, or whereby consent had been revoked, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class.

96.    The Plaintiff's claim is typical of those of the class members. All are entitled to relief by virtue of Defendant's violations of the consumer protection statutes raised in Plaintiff's Complaint.

97.    The Plaintiff will fairly and adequately protect the interests of the class. She has retained counsel experienced in class actions as well as the handling of actions involving unlawful business practices. Neither Plaintiff nor her counsel has any interests antagonistic to the Class or which might cause her not to vigorously pursue this action.

98.    Certification of a class under Rule 23(b)(2) is appropriate since the Defendant has acted on grounds that apply generally to the class so that final injunctive and declaratory relief is appropriate.

99.    Certification of a class under Rule 23(b)(3) is appropriate, in that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The interests of the class members in individually controlling the prosecution and defense of separate actions is minimal, in that the class members are unlikely to be aware that their rights were violated and that individual actions are uneconomical. Difficulties likely to be

encountered in managing this class action are substantially less than those that are involved in other types of cases routinely certified as class actions.

100.    This Class Action Complaint seeks money damages and injunctive relief.

101.    The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Defendant.

102.    Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

A.  Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing the undersigned Counsel as Class Counsel;

B.  Adjudging that Defendant violated the FDCPA sections enumerated above, and awarding Plaintiff and Class members actual damages in the form of money paid to Defendant on the discharged debt and statutory damages pursuant to 15 U.S.C. § 1692k;

C.  Adjudging that Defendant violated the FCCPA, Fla. Stat. § 559.72(9), and awarding Plaintiff and Class members actual and statutory damages pursuant to Florida Statutes § 559.77(2);

D. Declaring that Defendant's attempt to collect debts previously discharged in bankruptcy is unlawful;

E. Enjoining Defendant from sending billing letters similar to *(Exhibit "B")* in the manner described in this lawsuit;

F. Ordering disgorgement of all ill-gotten sums collected in violation of the law;

G. Awarding Plaintiff, and all those similarly situated, reasonable attorney's fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3), and Florida Statutes § 559.77(2);

H. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

I. An injunction prohibiting Defendant from using an artificial or prerecorded voice message to call numbers assigned to cellular telephones without the prior express consent of the called party;

J. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

K. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

L. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

M. Awarding such other and further relief as the Court may deem just and proper.


## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, demands trial by jury.

Dated this 4th day of May, 2017.

**MAX STORY, P.A.**

/s/ Max Story
Max Story, Florida Bar No: 527238
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL  32250
Telephone:  (904) 372-4109
Facsimile:  (904) 758-5333
*max@maxstorylaw.com*


JANET R. VARNELL, FBN:  0071072
BRIAN W. WARWICK, FBN:  0605573
**VARNELL & WARWICK, P.A.**
P.O. Box 1870
Lady Lake, FL  32158
Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
*jvarnell@varnellandwarwick.com*
*bwarwick@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*
**Attorneys for Plaintiff**