## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JOYCE FUDGE WILLIAMS,
on behalf of herself and
all others similarly situated,                    CASE NO.: 3:17-cv-00570-J-25JRK

       Plaintiff,

vs.

NEW PENN FINANCIAL, LLC,
D/B/A SHELLPOINT MORTGAGE
SERVICING, INC.,

       Defendant.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
## FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Joyce Fudge Williams, individually and on behalf of all others similarly situated, ("Williams" or "Plaintiff"), by and through her undersigned counsel, files this Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action Settlement.  In support of the motion, Plaintiff states as follows:

## I.      TERMS OF THE PROPOSED SETTLEMENT

This is a class action seeking class wide relief for violation of the FDCPA to recover statutory damages on behalf of all those similarly situated pursuant to 15 U.S.C.A. § 1692k(a)(2)(B), the Florida Consumer Collection Practices Act, Florida Statutes §§ 559.55, et seq. ("FCCPA"), the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff's individual claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227; and attorney's fees and the costs of this action under 15 U.S.C.A. § 1692k(a)(3).

Under the proposed Settlement, The Settlement Class is defined as:

All Florida consumers:  (1) whose mortgage loans were secured by residential property located in Florida; (2) whose mortgage loan was service-released to Shellpoint with an

effective date on or after May 18, 2015; (3) who received a Chapter 7 discharge of their personal liability on the mortgage debt prior to the effective date Shellpoint began servicing the loan; and (4) who, after receiving a discharge, received a Welcome Letter in connection with that discharged mortgage debt in the same form as the communication attached to the class notice.

Shellpoint believes the total number of people within the Settlement Class to be 987. The Agreement is conditioned upon the actual number of Settlement Class Members not exceeding 987 by more than 5%. In the event the actual number of Settlement Class Members exceeds 987 by more than 5%, this Agreement is voidable at Shellpoint's exclusive option, returning the Parties to status quo as of July 18, 2018.

Shellpoint shall pay each Settlement Class Member either $250.00 if the Welcome Letter was received between May 18, 2015 - May 17, 2016 or $350.00 if the Welcome Letter was received between May 18, 2016 and the date of the Preliminary Approval Order (the "Settlement Payment"). Only one Settlement Payment will be made per Class Loan, with the Settlement Payment to be made to the primary borrower on the account. The purpose of this method was to negotiate the maximum Settlement Payment per loan and so as not to disproportionately reward Class Loans on which there are multiple borrowers.

Any funds remaining in the Settlement Administrator's account as a result of Settlement Class Members' failure to cash the Settlement Payment within 90 days shall first be used to pay any Settlement Administrator costs and expenses, with any remaining funds to be disbursed to a *Cy Pres* recipient to be determined by the Court after proposals are submitted by each Party prior to the Fairness Hearing.

Shellpoint shall pay named Plaintiff, Joyce Fudge Williams $5,500.00. This amount includes $3,500.00 to settle Ms. Williams' individual TCPA claim, and $2,000.00 as a Class Representative Award for her time and efforts on behalf of the Settlement Class.

Individual settlement of Plaintiff's TCPA claim is fair and reasonable because after extensive discovery into the facts and circumstances of the TCPA allegations, Class Counsel determined that the TCPA claim was not amenable to class certification. The reason for this is because the telephony equipment used by Defendant Shellpoint was not uniform across the putative class, because there were insurmountable hurdles to ascertainability of the class, and because the individualized facts and circumstances of each class member's situation relating to alleged debt collection telephone calls were too individualized to be amenable to class treatment. However, discovery also revealed that Plaintiff Williams's individual TCPA claim was potentially meritorious, under the facts and circumstances of her individual claim. As a consequence, Class Counsel proposes a settlement of Plaintiff Williams's individual TCPA claim for $3,500.00, which is in the range of reasonable settlements for individual TCPA claims. This individual settlement does not compromise the rights or interests of any class member as to their potential TCPA claims, as any class member may pursue his/her individual TCPA claim independent of this proposed Settlement Class. See Declaration of Janet Varnell, attached hereto as Exhibit 1.

Finally, Shellpoint has agreed to pay Class Counsel $61,150.00 in attorney fees and costs. All of these attorneys' fees and costs relate to the proposed Class Settlement of the FDCPA/FCCPA claims, and none relate to the individual TCPA settlement. Shellpoint shall bear the reasonable expenses incurred by the Settlement Administrator in identifying the members of the Settlement Class. Costs of settlement administration, printing and distributing checks to the members of the Settlement Class, and postage relating to the foregoing will be the sole responsibility of Shellpoint.

## II.      THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED CLASS.

Plaintiff asks this Court to certify a Settlement Class pursuant to Federal Rule of Civil Procedure 23, for the reasons set forth below.

### A.  STANDARD FOR CLASS CERTIFICATION.

In order for a class to be certified, even for settlement purposes, the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied along with one of the three categories of Rule 23(b). *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). The trial court has "broad discretion" in deciding whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1669 (11th Cir. 1992). When ruling on a motion for class certification "the court is generally bound to take the substantive allegations of the complaint as true." *Brinker v. Chi. Title Ins. Co.*, 2012 WL 1081211 (M.D. Fla. Feb. 9, 2012). "Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions." *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975). Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. § 1692k(a) and (b) for FDCPA class action cases.

### B.      THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION.

"Letter class actions" of this nature for violations of the FDCPA are eminently certifiable. *See, e.g., Prindle v. Carrington Mortgage Services, LLC*, 2016 WL 4466838, at *11 (M.D. Fla. 2016); *Baez v. LTD Financial Services, L.P.*, 2016 WL 3189133, at *5 (M.D. Fla. 2016)("All members experienced the same factual circumstances which caused this lawsuit: they all received the same dunning letter from LTD seeking partial payment on a time-barred debt without disclosing the legal consequences of such a partial payment."); *Agan v. Katzman & Korr, P .A.*, 222 F.R.D. 692 (S.D. Fla.2004); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697

4

(M.D. Fla.2000); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 666-69 (M.D. Fla.1999); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008). Letter cases are readily certifiable because a Court can view the content of the common communications and the timing of those communications and determine for all class members whether they violate the FDCPA, a strict liability statute.   Moreover, the "least sophisticated consumer" standard to be applied to FDCPA claims, means that there are no individual interpretations or reliance issues to contend with. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-75 (11th Cir. 1985).

### 1. RULE 23(a)(1)–NUMEROSITY.

Rule 23(a)(1) requires that the class be "so numerous that joinder of the members is impracticable"; however, impracticable does not mean impossible. *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). "The Court is given discretion to make assumptions when determining the numerosity of a class." *Agan*, F.R.D. at 696. The court may "make common sense assumptions in order to find support for numerosity." *Drossin v. Nat'l Action Fin. Servs.*, 255 F.R.D. 608, 615 (S.D. Fla. 2009) (internal citations omitted). "[A] class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982).

"When the class is large, numbers alone are dispositive…" *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). Where the class numbers 25 or more, joinder is usually impracticable. *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate…" *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal citations omitted). Courts have certified classes with significantly less class members than

Defendant Shellpoint has admitted exists here. *See e.g. Afro American Patrolmens League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (35 class members); *Riordan*, 113 F.R.D. at 62 (29 class members); *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 625 (N.D. Ill. 2007) (26 class members).

"The focus of the numerosity inquiry is not whether the number of proposed class members are 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (internal citations omitted). "While the size of the proposed class is highly relevant to the court's determination of numerosity, courts must also consider factors such as 'the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits.'" *Id*. Moreover, "where the question on numerosity is a close one, a balance should be struck in favor of a finding of numerosity, as the court always has the option to decertify pursuant to Rule 23(c)(1)." *Leszczynski v. Allianz, Ins*., 176 F.R.D. 659, 670 (S.D. Fla. 1997).

Here, the members of the putative Class are so numerous that joinder of all members is not practical. Shellpoint believes the total number of people within the Settlement Class to be 987. This number—combined with the nature of the action, the impracticability of joinder of geographically dispersed class members, and the potential waste of judicial resources and inconvenience should Class Members try individual lawsuits—easily and indisputably satisfies the numerosity requirement under Rule 23(a)(1) for certifying this matter as a class action.

## 2.   RULE 23(a)(2)–COMMONALITY.

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there be a common question of law or fact. Not all factual or legal questions raised in the litigation need to be common so long as at least one issue is common to all class members. *Armstead*, 629 F. Supp. at 280; *Pottingar v. Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Commonality of claims "requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal citations omitted).

Courts have held that a "common nucleus of operative facts" is typically sufficient to meet the commonality requirement Rule 23(a)(2). *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "Common nuclei of fact are typically manifest where … the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Id*. "Where the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004). "[I]t is not just the presence of common questions that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 685 (S.D. Fla. 2013), quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

In the instant case each putative class member was sent the same form Welcome Letter seeking to collect a debt previously discharged in bankruptcy, which Plaintiff alleges violates the FDCPA and/or FCCPA. "To establish commonality, it is sufficient that Plaintiffs allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999). FDCPA and/or FCCPA claims based on standard language or standard practices are well suited for class certification. *See id.*; *Drossin*, 255 F.R.D. at 608.

The primary legal question in this case is whether Defendant's form Welcome Letters seeking to collect debts discharged in bankruptcy violates the FDCPA and/or FCCPA. "This overriding common question, which is subject to common resolution, is enough to establish commonality." *See Manno*, 289 F.R.D. at 685 (holding that the question of whether defendant violated the FDCPA by leaving voice message for putative class members and failing to disclose message was from a debt collector was sufficient to establish commonality).

Because each of the putative class members' claim depends on the same legal question— whether Defendant Shellpoint's form Welcome Letter seeking to collect debts discharged in bankruptcy violates the FDCPA and/or FCCPA—Plaintiff has satisfied the commonality requirement of Rule 23(a)(2).

**3. RULE 23(a)(3)–TYPICALITY**.

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the named plaintiff be typical of the claims of the class. A claim is typical if it arises from the same practice that gives rise to the claims of other class members and the claims are based on the same legal theory. *Kornberg*, 741 F.2d at 1337.

In the instant case, typicality is inherent in the class definition, as each of the putative class members were sent the same form Welcome Letter to collect a debt that had been

previously discharged in bankruptcy, in alleged violation of the FDCPA and FCCPA. *See Fuller*, 197 F.R.D. at 700 (finding typicality where the putative class members were each sent one of two variations of a debt collection letter plaintiff alleged violated the FDCPA).

Plaintiff and the putative class members were all sent the same form Welcome Letter seeking to collect on discharged debts. There is no variation in the substance of the form Welcome Letter, other than each class members' personal information and debt information. Accordingly, the typicality requirement has been met because each putative class member will be traveling under the same legal theory and each class members' claim will involve the same legal question—whether Defendant's form Welcome Letter seeking to collect a debt discharged in bankruptcy violated the FDCPA and FCCPA.

## 4. RULE 23(a)(4)–ADEQUACY OF REPRESENTATION.

Rule 23 of the Federal Rules of Civil Procedure also requires that a named plaintiff provide fair and adequate protection of the interests of the class. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1323 (11th Cir. 2008) (internal citations omitted). Generally, a class representative must have a "'working knowledge' of the case"; however, "the threshold of knowledge required to qualify a class representative is low." *In re Checking Account Overdraft Litig*., 281 F.R.D. 667, 675 (S.D. Fla. 2012). "It is well-settled that it is not necessary for named class representatives to be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action." *Powers v. Gov't Employees Ins. Co*., 192 F.R.D. 313, 317–318 (S.D. Fla.1998).

Ms. Williams understands the basic facts and law at issue in this case, and she understands her responsibilities as the class representative in this matter.  See Affidavit of Joyce Fudge Williams, attached hereto as Exhibit 2.  She was sent and has reviewed the important papers in this litigation, understood the points and arguments, and has had conversations with her lawyers when she needed things explained to her. *Id.* She has selected counsel who are skilled and experienced in consumer class action litigation. *Id.*

Plaintiff and the putative settlement class is represented by attorneys experienced in handling consumer class actions. See Declaration of Janet R. Varnell, attached hereto as Exhibit 1. Counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action. *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010).

A relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff coincide with the general interests of the class. Here Plaintiff and the putative class members seek statutory damages as the result of Defendant Shellpoint's collection practices. Given the identical nature of the FDCPA and FCCPA claims between the Plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of Plaintiff and those of the class.

Based on the above, the Rule 23(a)(4) adequacy requirement has been satisfied. Joyce Fudge Williams should be appointed as the class representative. Pursuant to Rule 23(g), the parties request the Court appoint Janet R. Varnell, Brian W. Warwick and David K. Lietz of the law firm of Varnell & Warwick, P.A. and Max Story of the law firm of Max Story, P.A. as Class Counsel.

### 5. RULE 23(b)(3)–COMMON QUESTIONS OF LAW OR FACT PREDOMINATE.

In addition to satisfying the four requirements under Rule 23(a), "a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Rule 23(b)(3) requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members." Under Rule 23(b)(3), "[t]he court's inquiry is typically focused on 'whether there are common liability issues which may be resolved efficiently on a class-wide basis.'" *Drossin*, 255 F.R.D. at 613 (internal citations omitted). "Under Rule 23(b)(3), it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby*, 513 F.3d at 1324, quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

Although it is not necessary that all questions of law or fact be common, in this case the questions of law or fact at issue are common to Plaintiff and all members of the putative class. The "common nucleus of operative fact" is that all class members, by definition, were sent the same form Welcome Letter regarding a debt that was discharged in bankruptcy, which Plaintiff alleges was a communication seeking to collect a debt that violates 15 U.S.C. § 1692e. Cases dealing with the legality of standardized documents and practices are generally appropriate for resolution by class action because the document or practice is the focal point of the analysis. *Drossin*, 255 F.R.D. 608.

In *Prindle v. Carrington Mortgage, supra*, this Court certified a nearly identical FDCPA debt collection action, as follows:

> As to the second purportedly common question, because the least-sophisticated consumer standard is objective, and Carrington conceded at oral argument on May 9, 2016, that that standard does

not take into account the individual circumstances of a plaintiff, see Tr. of May 2016 Hearing at 69–70, the Court must examine only the mortgage statement in determining whether it violated the FDCPA. As such, whether the mortgage statement would be false, deceptive, or misleading from the perspective of the least sophisticated consumer presents a common question because it may be decided "in one stroke" based on the language of the statement itself.

*Prindle,* 2016 WL 4466838 at *9.

Because of the standardized nature of Defendant Shellpoint's conduct, questions common to Plaintiff and the putative class members likewise predominate this matter. The only individual issue is the identification of persons to whom Defendants sent the Welcome Letter in the same form as were sent to Plaintiff.  Shellpoint has already identified these persons through a review of its business records. It is clear that both the factual issues and the issues of law are common to the class.  Whether Shellpoint's issuance of these documents on discharged debts would be false, deceptive or misleading to the least sophisticated consumer is the predominating common question in this litigation.  As a result, the predominance requirement of Rule 23(b)(3) is also established.

## 6.  RULE 23(b)(3)–CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS TO RESOLVE THIS CONTROVERSY.

The superiority issue is concerned with whether a "class action is superior to other available methods for the fair and efficient adjudication of the [controversy]." *Busby*, 513 F.3d at 1326. Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. "[T]he class action procedure allows for the efficient and economical litigation of a question potentially affecting every class member." *Kelly v. Sabretech Inc*., 195 F.R.D. 48, 51 (S.D. Fla. 1999).

The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992). It is proper for a court, in deciding the "best" available method to resolve the controversy, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc*., 503 F.2d 1161, 1165 (7th Cir. 1974).

In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiff. *See Hicks v. Client Servs*., 257 F.R.D. 699, 700 (S.D. Fla. 2009). For an FDCPA claim, the class recovery of statutory damages is the lesser of $500,000.00 or 1% of a defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B).

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual subjected to Defendant Shellpoint's practices. Class actions are a more efficient and consistent means of trying the legality of a debt collector's form collection letter.  See *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990).  Class certification of this FDCPA action will provide an efficient and appropriate resolution of the controversy.

Accordingly, the preponderance and superiority elements of Rule 23(b)(3) have been met.  Where all of the necessary elements of Rule 23(b) have been established, certification of the settlement class is appropriate, and the Court should so order.

### III.    THE LEGAL STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).   In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" such that notice should be issued to the class.  4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  *See* Manual for Complex Litigation, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Granting preliminary approval will allow Settlement Class Members to receive notice of the proposed Settlement terms, and of the date and time of the Final Approval Hearing at which Settlement Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties.  *See* Manual for Compl. Lit., §§ 13.14, 21.632.  However, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may or may not conduct a hearing.  Id. § 13.14.

## IV.   THIS SETTLEMENT FALLS WITHIN THE "RANGE OF REASONABLENESS" AS TO ITS FAIRNESS, ADEQUACY AND REASONABLENESS.

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" such that notice should be issued to the class.  4 Newberg § 11.26. The Eleventh Circuit has enumerated six factors a district court should consider in evaluating the fairness, adequacy, and reasonableness of a class action settlement: (1) the plaintiff's likelihood of success on the merits, (2) the range of the plaintiff's possible recovery, (3) the point within the range of possible recovery at which settlement is fair, adequate, and reasonable, (4) the expected complexity, cost, and duration of litigation, (5) any opposition to the proposed settlement, and (6) the stage of the litigation at which settlement was reached. ("*Faught* Factors").  *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).

At this preliminary approval stage, this Court can readily determine that each of the *Faught* fairness factors weighs in favor of preliminarily approving the terms of this Settlement. First, the Settlement was reached in the absence of collusion, and is instead the product of good-

faith, informed and arm's length negotiations by competent counsel.  Second, this matter is being settled by counsel experienced in this type of litigation after motions to dismiss, discovery, and a full day of mediation.

Third, a preliminary review of the *Faught* fairness factors, in light of the terms of the settlement, indicates that the terms of the Settlement appear to be fair, adequate and reasonable. The only claims that remained were for statutory damages pursuant to § 1692(a)(2)(B) of the FDCPA, which limits statutory damages to 1% of the Defendant's Net Worth or up to $1,000 per person.  Rather than litigate over the net worth of Shellpoint, the parties agreed to settle for a payment of either $250.00 if the Welcome Letter was received between May 18, 2015 - May 17, 2016 or $350.00 if the Welcome Letter was received between May 18, 2016 and the date of the Preliminary Approval Order.  The difference between the two amounts and dates is premised on the statute of limitations which is one year for FDCPA and two years under the FCCPA. Regardless of the net worth of Shellpoint, this amount is very fair considering that no actual damages were recoverable and Defendants had a belief the statements complied with the law and did not attempt to collect on a discharged debt.

In the case of *Prindle v. Carrington Mtg Services, LLC*, 3:31-cv-01349 (M.D. FL 2017), Judge Howard approved a settlement in a case dealing where nearly identical claims were advanced.  The class members received $350 each under the settlement.   Although class members here only receive $350 if they have both an FCCPA and an FDCPA claim available under the applicable statute of limitations, the class members in this case did not have to risk the litigation of many important issues that were litigated in the *Prindle* case.  For example, the class in *Prindle* actually had to undergo a contested class certification and had to respond to the summary judgment motion.  In *Prindle*, the Court dismissed the FCCPA claim entirely but did

certify the FDCPA class.  In the instant case, the Defendant has agreed to recognize the FCCPA claim and assign significant value to the claim despite the existing rulings that call that claim into question.  The Defendant here also agreed to pay approximately 71% of the settlement amount achieved in Prindle for the same FDCPA claim without the years of litigation and work required in <u>Prindle</u> to achieve the settlement and the subclass who have an arguable claim under the FCCPA here are getting 100% of the settlement amount received in the *Prindle* settlement.

Even if successful at trial, it is not clear that this Court would award individual statutory damages in excess of this amount.  In fact, the vast majority of FDCPA class action settlements involve substantially smaller statutory recoveries.  See e.g., *Gonzalez v. Dynamic Recovery Solutions, LLC,* 2015 WL 738329, at *4 (S.D.Fla. 2015) (FDCPA statutory damages claims to be dismissed in class action settlement in exchange for $15,000.00 *cy pres* payment to Legal Aid where individual recoveries would be too small); *Harlan v. Transworld Systems, Inc.,* 302 F.R.D. 319, 326 (E.D.Pa. 2014) ($24.46 per class member FDCPA statutory damages approved); *Lewinowski v. MFP, Inc.*, 2014 WL 1418263, at *1 (M.D.Fla. 2014) (Cy Pres award to Legal Aid approved due to small dollar amount of individual recovery of statutory FDCPA damages).

Even assuming Shellpoint's Net Worth provided for the statutory maximum of $500,000, the proposed Settlement provides for more than half that maximum value.  Considering the complexity of the claims and that Shellpoint's position on liability, the compromise is certainly within the range of reasonableness such that preliminary approval should be granted. Accordingly, this Court should find that the proposed Settlement appears to be within the range of reasonableness such that notice should issue to the Settlement Class, a final Fairness Hearing should be scheduled, and the Settlement Class should be certified for settlement purposes.

## V.       THE INCENTIVE AWARD FOR PLAINTIFF IS APPROPRIATE

Traditionally, class representatives are compensated for the time and effort in bringing the litigation on behalf of others through what is termed an "incentive award."  Many courts have addressed incentive awards to class representatives as a means to encourage litigants to bring class litigation, which will further the public policy underlying the statutory scheme.

Incentive awards are not uncommon in class action litigation where, as here, a common fund has been created for the benefit of the class. Incentive awards compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *Allapattah Servs., Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006) (citing *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 272-76 (S.D. Ohio 1997)). Incentive awards serve an important function, particularly where the named plaintiffs participated actively in the litigation.  *Id.* (citing *Denney v. Jenkens & Gilchrist,* 230 F.R.D. 317, 2005 WL 388562, at *31 (S.D.N.Y. Feb.18, 2005)).

While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.  *Allapattah Servs.,* 454 F. Supp. 2d at 1218-19.  In fact, "'[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'"  *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga.2001)(quoting *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 272 (S.D.Ohio 1997)(collecting cases)); *see also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998) (affirming award of $25,000 to named plaintiff); *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 400 (D.D.C.2002) ("Incentive awards are not uncommon in class action

litigation and particularly where ... a common fund has been created for the benefit of the entire class.... In fact, [c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation") (internal quotations and citation omitted); *Godshall v. Franklin Mint Co.,* 2004 WL 2745890, at *6 (E.D.Pa. Dec.1, 2004) (granting special award of $20,000 to each named plaintiff for their work as class representatives); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350, at *18-19 (E.D.Pa. June 2, 2004) (awarding $25,000 for each of the five class representatives); *Tenuto v. Transworld Sys.,* 2002 WL 188569, at *4-5 (E.D.Pa. Jan.31, 2002) (granting award of $2,000); *Dornberger v. Metropolitan Life Ins. Co.,* 203 F.R.D. 118, 124-125 (S.D.N.Y.2001) (approving an award of $10,000 for Dornberger and $1,500 for the eight sub-class representatives); *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 145 (E.D.Pa.2000) ("courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 449 (S.D.Tex.1999) (granting awards of between $1,000 and $10,000); *In re Residential Doors Antitrust Litig.,* 1998 WL 151804, at *11 (E.D.Pa. Apr.2, 1998) (awarding an incentive award of $10,000 to each of the four Class representatives); *In re Plastic Tableware Antitrust Litig.,* 1995 WL 723175, at *2 (E.D.Pa. Dec.4, 1995) (granting award of $3,000); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357 (N.D.Ga.1993) (granting award of $2,000 to plaintiffs that produced documents and awarding $5,000 to plaintiffs that were also deposed).

In *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit provided a list of some pertinent considerations when evaluating an incentive award:

> Because a named plaintiff is an essential ingredient of any class action, an
> incentive award is appropriate if it is necessary to induce an individual to

participate in the suit. . . . In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

*Cook*, 142 F.3d at 1015 (citation omitted).

Incentive awards are frequently approved in class actions where, as here, the plaintiff was extensively involved in discovery and litigation activities.   Extensive involvement encompasses producing documents, responding to discovery requests, participating in settlement negotiations, and consulting with class counsel on litigation strategy. *See, e.g.*, *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d. 766, 787 (N.D. Ohio 2010) (approving incentive awards of $5,000 to plaintiffs who substantially contributed to litigation and testified at the fairness hearing); *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 258–59 (D.N.J. 2005) (approving $10,000 incentive awards to plaintiffs who worked closely with counsel and were crucial to settlement, $3,000 incentive award to plaintiff who produced documents, appeared for deposition, and attended the fairness hearing, and $1,000 incentive award to plaintiff who only played a minor role in settlement negotiations); *In re Lease Oil Antitrust Litig. (No. II),* 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving higher incentive awards to plaintiffs who produced personal records, appeared for lengthy depositions, and attended hearings); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357–58 (N.D. Ga. 1993) (approving incentive awards of $5,000 to plaintiffs who appeared for deposition and $2,500 to plaintiffs who produced documents in discovery).

Here, Ms. Williams is being paid a $2,000 incentive award. In addition, Shellpoint has agreed to pay Ms. Williams $3,500 in alleged actual damages for her TCPA claim.  As explained above, Class Counsel determined through discovery that while the TCPA claim was not amenable to class treatment, Ms. Williams's individual TCPA claim is tenable.   As a

consequence, the parties reached a settlement of that individual claim that is within the range of reasonableness for an individual TCPA claim.  Settlement of this individual TCPA claim is not prejudicial to any class member, as any class member may still pursue his/her individual TCPA claim.

Ms. Williams put in substantial time representing the class in this matter, including preparing extensive discovery responses, and taking time off work to participate in a full day of mediation.  Accordingly, the full award set forth in the Settlement Agreement to Ms. Williams should be approved.

## VI.    PLAINTIFF'S ATTORNEY FEES AND EXPENSES

The proposed Settlement contemplates a payment of $61,150.00 in attorney fees and costs to Class Counsel, all of which relate to the Class Settlement of the FDCPA and FCCPA claims.  The fee and expense negotiations were conducted at arm's-length after an agreement for the class had been reached and is being paid over and above the relief to the class.  Payment of attorney fees and costs is in addition to the relief provided to the class and will not diminish the relief to the class.  Settlement agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after material terms of the settlement have been agreed to between the Parties. See, Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney fees").

Class counsel expended considerable time and effort on this matter.  First, the discovery proved to be difficult and time consuming as a result of the manner in which Shellpoint retained its records.  Second, and most importantly, the motion to dismiss involved complex issues and

novel legal theories.   Counsel was required to show expertise in bankruptcy law, preemption, class actions, and the FDCPA and FCCPA.      Simply stated, this was not a run-of-the-mill FDCPA letter case.

As will be more fully set forth in Plaintiff's Memorandum of Law in support of Final Approval, the attorney fees and costs agreed upon by the parties represents less than the lodestar calculation for the two law firms representing the class.   Such a fee is certainly within the range of reasonableness such that notice should be issued to the class.   Therefore, this Court should find that the Attorney Fee segment of the Settlement Agreement also falls with the range of reasonableness to warrant granting of preliminary approval.

## VII.    THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

Notice is an integral part of Rule 23(b)(3).   Class actions under this subdivision are only allowed when common questions of fact or law predominate and class-action treatment is thought to be superior to other available means of settling the controversy.   *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652 (1950).   Without the notice requirement, it would be constitutionally impermissible to give the judgment binding effect against the absent class members.   Notice to the class must be given before entry of judgment in order to allow class members the opportunity to either participate in the proceedings, or to opt out of the proceedings.   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-176 (1974) (notice and opportunity to opt out required by due process).   Notice must be sent well before the merits of the case are adjudicated.   *Brown v. Colegio de Abogados de Puerto Rico*, 613 F.3d 44, 51 (1st Cir. 2010) (The purpose of the rule regarding notice for a class action is to ensure that the plaintiff class receives notice of the action well before the merits of the case are adjudicated.)

The Eleventh Circuit's position on class notice in Rule 23(b)(3) certified class actions is one of strict adherence to due process. *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1078 (11th Cir. 2000) (holding that certification under Rule 23(b)(3) would require that the class members receive notice of the suit "well before the merits of it are adjudicated.") citing *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995); See also Fed. R. Civ. P. 23(c)(2); 7B Wright, Miller & Kane.

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. "The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Fed. R. Civ. P. 23(b)(3).

Exhibit 1 to the Settlement Agreement is a proposed class notice which the parties believe satisfies the requirements of Rule 23(b)(3), and which will provide Settlement Class Members with all the information necessary to file claims, opt out, or file objections to this Settlement. Accordingly, Plaintiffs request that this Court approve the Notice in the form of

Exhibit 1, and that this Court order notice be issued to the class upon preliminary approval by the due dates set forth in the Settlement Agreement.

## VIII.   SETTLEMENT TIMELINE

The Settlement Notice requirements of the Class Action Fairness Act ("CAFA") dictate that Notice be provided to the appropriate officials.  A court cannot enter an order giving final approval to the settlement until 90 days after the CAFA Notice is given. 28 U.S.C. § 1715.

Accordingly, the Parties propose the following schedule:

1. Preliminary Approval Order signed by this Court;

2. CAFA Notice issued by Defendant within 3 business days of Preliminary Approval Order;

3. Settlement administrator to perform skip-trace of all potential class members within 10 days of Preliminary Approval Order;

4. Notice to be issued to Verified Class Members by Settlement Administrator within 21 Days of Preliminary Approval;

5. Opt-Out deadline 30 days before Final Approval Hearing;

6. Objection deadline 30 days before Final Approval Hearing;

7. Joint Motion for Final Approval and corresponding briefing by the Parties due 14 days before Final Approval Hearing; and

8. Final Approval Hearing not less than 100 days from the date of the Preliminary Approval Order.

IX.     **CONCLUSION**

For the reasons set forth above, this Court should enter the Proposed Preliminary Approval Order attached to the Joint Motion as Exhibit B allowing notice to be issued to the class and taking this Settlement to the next stage of resolution.

Dated:  September 18, 2018                    **VARNELL & WARWICK, P.A.**

By:     /s/ Janet R. Varnell
        JANET R. VARNELL
        Florida Bar No.:  0071072
        BRIAN W. WARWICK
        Florida Bar No.:  0605573
        DAVID K. LIETZ
        (Admitted Pro Hac Vice)
        P.O. Box 1870
        Lady Lake, FL  32158
        Telephone: (352) 753-8600
        Facsimile:  (352) 504-3301
        jvarnell@varnellandwarwick.com
        bwarwick@varnellandwarwick.com
        dlietz@varnellandwarwick.com
        kstroly@varnellandwarwick.com

        **MAX STORY, P.A.**
        Max Story
        Florida Bar No: 527238
        328 2nd Avenue North, Suite 100
        Jacksonville Beach, FL  32250
        Telephone:  (904) 372-4109
        Facsimile:  (904) 758-5333
        max@maxstorylaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify on September 18, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

s/Janet R. Varnell
Janet R. Varnell
