## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JOYCE FUDGE WILLIAMS,**
on behalf of herself and all
others similarly situated,

      Plaintiff,

vs.                                                    Case No.: **3:17-cv-570-J-25JRK**

**NEW PENN FINANCIAL, LLC,**
d/b/a Shellpoint Mortgage
Servicing, Inc.,

      Defendant.

_____/

## FINAL ORDER AND JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff's Amended Motion for

Final Approval of Class Action Settlement and Approval of Attorney Fee

Award and Supporting Memorandum (Dkts. 55, 57) and Plaintiff's

Amended Notice of Proposal for Cy Pres Distribution (Dkt. 58) filed on

February 22, 2019.

On February 28, 2019, the Court held a final fairness hearing, at

which counsel for both parties were present, and no individual appeared to

object to the settlement (Dkt. 59).

For the reasons that follow, the Court finds that the Motion is due to

be **GRANTED**, the proposed settlement is due to be **APPROVED**, and

Plaintiff's proposed cy pres recipient, FoolProof Foundation, is
**APPROVED**.

## I.    Background

On May 18, 2017, Plaintiff filed this class action based on claims
brought pursuant to the Fair Debt Collection Practices Act (FDCPA), 15
U.S.C. § 1692 et seq. (Count I), Florida Consumer Collection Practices
Act (FCCPA), Fla. Stat. § 559.55 et seq. (Count II), the Declaratory
Judgment Act, 28 U.S.C. § 2201 (Count III), and Telephone Consumer
Protection Act (TCPA), 47 U.S.C. § 227 et seq. (Count IV) (Dkt. 1).  After
the Court granted in part Defendant's Partial Motion to Dismiss on
November 29, 2017, Plaintiff filed an Amended Complaint (Dkts. 33, 34).

Following mediation on July 18, 2018, Plaintiff and Defendant
reached an agreement to settle Ms. Williams' individual TCPA claim and
class FDCPA and FCCPA claims (Dkt. 45).  On December 21, 2018, the
Court entered the Preliminary Approval Order preliminarily certifying a
class for settlement purposes only, preliminarily approving the parties'
proposed class settlement, appointing the class representative and class
counsel, approving the notice plan, and setting a final fairness hearing
(Dkt. 52).

2

The Settlement Class is comprised of the 1226 primary, joint and/or co-borrowers on the 976 home mortgage loans who received the Welcome Letter at issue in this action (Dkts. 52; 55, ex. 1). After distributing notice of the Settlement to the Settlement Class Members, Plaintiff filed an Amended Motion for final approval of the Class Action Settlement that also seeks approval of attorneys' fees (Dkts. 52, 55, 57). In support, Plaintiff submits declarations by Settlement Administrator April Vaught and Class Counsel Janet Varnell (Dkt. 55, exs. 1, 2).

## II.    The Settlement

Each Settlement Class Member will receive either $250 if the Welcome Letter was received between May 18, 2015 to May 17, 2016, or $350 if the Welcome Letter was received between May 18, 2016 and December 21, 2018, the date of the Preliminary Approval Order (Dkts. 47, ex. 1, p. 8; 52). One Settlement Payment will be made per Class Loan (Dkts. 47, ex. 1, pp. 5, 8, 13).

Any court-approved attorneys' fees, costs and incentive awards of Class Counsel and the Class Representative will be paid by New Penn Financial, LLC (Shellpoint) separately and in addition to the Settlement Payment (Dkt. 47, ex. 1, p. 14). Additionally, Shellpoint has separately

funded the costs of notice and settlement administration (Dkts. 47, ex. 1, pp. 7-8, 16).

Any individual who wished to pursue actual damages, or actual damages together with individual statutory damages, was given the opportunity to opt out of the Settlement Class (Dkts. 47, ex. 1, p. 11; 52).

In exchange for the settlement relief, Settlement Class Members will release all claims:

> arising out of or any way related to the Welcome Letter or any other communication (oral or in writing) from Shellpoint during the Class Period related to alleged improper post-bankruptcy discharge collection efforts of the Class Loan, including, but not limited to claims that could be made pursuant to the FCCPA, FDCPA, and contempt actions for alleged bankruptcy discharge violations.

(Dkt. 47, ex. 1, pp. 17-18). The Settlement will not alter, extinguish, release or modify the terms of the Settlement Class Members' loans that are still in effect as of the Final Settlement Date (Dkt. 47, ex. 1, pp. 4-6, 13, 17-19).

## III.   Adequacy of Class Notice

A court is required to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice must also include specific information for a Rule 23(b)(3) class. See Fed. R. Civ. P. 23(c)(2)(B). "Individual notice must be

4

sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Additionally, due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 174 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

In this case, the Court approved the form and content of the parties' proposed notice plan as "reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Lawsuit, the terms of the proposed settlement, and of their rights under and with respect" to it (Dkt. 52, p. 15). The Court further concluded that the proposed notice plan satisfied "all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Federal Rule of Civil Procedure 23(c), and the United States Constitution (including the Due Process Clause)." (Dkt. 52, p. 16).

The Settlement Administrator has verified that notice was provided in accordance with the approved plan, and after completing an address search, that no notices were returned (Dkt. 55, ex. 1). Considering the circumstances of this case, argument of counsel and the straightforward

settlement proposal, the Court finds that the notice period was adequate. Thus, the Court concludes that the notice provided satisfies the requirements of Rule 23(c)(2)(B).

## IV.   Certification of Settlement Class

The Court notes there have been no objections to class certification and no change in circumstances to alter the Court's previous conclusions. Thus, the Court will certify the class for the reasons stated in the Preliminary Approval Order (Dkt. 52).

## V.   Final Approval of Class Action Settlement

### A.   Class Action Settlement Approval Standards

Settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins.*, 559 F.2d 426, 428 (5th Cir. 1977) (citations omitted). A district court, in reviewing a proposed settlement of a class action case, must find that no fraud or collusion occurred between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *Id.* at 428-29 (citations omitted); *see* Fed. R. Civ. P. 23(e)(2). In determining whether a proposed class action settlement is fair, adequate, and reasonable, a court considers the following factors:

(1)   the likelihood of success at trial;

6

(2) the range of possible recovery;

(3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;

(4) the complexity, expense and duration of litigation;

(5) the substance and amount of opposition to the settlement; and

(6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In weighing these factors, the court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted). In addition, Rule 23(e)(2) requires that the court consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

7

(D)   the proposal treats class members equitably relative to
each other.

Fed. R. Civ. P. 23(e)(2).  Upon consideration of the above factors and as

discussed below, the Court concludes that the proposed settlement is fair,

adequate, and reasonable.

### B.   Settlement Satisfies Judicial Approval Standards

#### 1.   Adequate Representation of Settlement Class

Rule 23(e)(2) directs consideration of whether "the class

representatives and class counsel have adequately represented the

class." Fed. R. Civ. P. 23(e)(2)(A).  In evaluating the adequacy of class

counsel and the class representative, the Advisory Committee suggests

courts consider whether class counsel and plaintiffs "had an adequate

information base" before negotiating and entering into the settlement.  *Id.*

advisory committee's note to 2018 amendment.  Prior to the Rule's

amendment, the Eleventh Circuit measured whether plaintiffs and their

counsel have the "quantum of information necessary to achieve a

settlement." *Cotton*, 559 F.2d at 1332.

Here, the Court has already found that Plaintiff and Class Counsel

were "experienced and adequate" (Dkt. 52, pp. 7, 11).  The record also

supports that Plaintiff and Class Counsel had sufficient information to

adequately evaluate the merits of the case.  *See, e.g., Bennett*, 737 F.2d

at 987 & n.9. For example, Plaintiff and Class Counsel, through discovery that included the deposition of Shellpoint's corporate representative, confirmed Shellpoint's practices as to the Class, the exact individuals who made up the Class, and its obligations for communications with discharged debtors (Dkts. 42, 47-48, 55, 57).

The "conduct of the negotiations" further confirms the adequacy of Class Counsel and Plaintiff's representation of the absent Class Members. *See* Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note to 2018 amendment. Having adequately informed themselves regarding the merits of the case, Class Counsel negotiated the resolution of the case through a mutually agreed upon mediator (Dkts. 21, 42, 45, 47, ex. 1; 48, 55).

Moreover, the settlement that was ultimately reached—after a full day of mediation—offers Settlement Class Members guaranteed, reasonable relief under the FDCPA and the FCCPA, without their having to file a claim. In addition, further discovery would not likely yield a better result considering the right to opt out has been afforded (Dkts. 47, ex. 1; 48, 55). Under these circumstances, the Court finds that Class Counsel and Plaintiff adequately represented the Settlement Class and this factor favors the Settlement's final approval.

### 2.    The Settlement is the Product of Arm's-Length Bargaining and Mediation.

In evaluating the fairness, adequacy, and reasonableness of a settlement, a court must ensure that the settlement is not the product of collusion by the negotiating parties. *See* Fed. R. Civ. P. 23(e)(2)(B); *Leverso v. SouthTrust Bank of AL.*, 18 F.3d 1527, 1530 & n.6 (11th Cir. 1994). Here, the Court has already found that the parties' Settlement Agreement "when viewed in light of the *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011) factors, falls within the range of reasonableness." (Dkt. 52, p. 14).

In particular, the parties' settlement negotiations were overseen by Terrence M. White, an experienced mediator they selected, and occurred after substantial discovery (Dkts. 21, p. 8; 45, 47, 48, 52; 55, pp. 7-8). As a result of the parties' negotiations, the Settlement offers all Settlement Class Members a reasonable award relating to the date at which they received the Welcome Letter, with any attorneys' fees, expenses, and incentive awards to be paid separately (Dkts. 47, ex. 1, pp. 8-9; 48, pp. 20-21; 55). Both the record in this case and the substantive terms of the Settlement reflect a good faith, arm's-length bargaining process (Dkts. 47, ex. 1; 48, 55).

Thus, the Court finds that the Settlement was not the product of fraud or collusion. *See* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note to 2018 amendment ("[T]he involvement of a neutral or court-affiliated mediator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests."); *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (unpublished) (concluding that the "parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator").

### 3.  Relief is Adequate for the Settlement Class.

Under Rule 23(e)(2)(C), the relief provided for the class in the settlement must be adequate, taking into account:

> (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  These factors are analogous to several of the *Bennett* factors, which require courts to consider the likelihood of success and range of possible recovery for the class at trial, measured against the trial's anticipated complexity, cost, and duration. *See Bennett*, 737 F.2d at 986. A plaintiff's likelihood of success at trial is weighed against the

11

amount and form of relief contained in the settlement. *See Cotton*, 559 F.2d at 1330. Similarly, consideration of the possible recovery includes an evaluation of the settlement in its entirety. *Id.*

Here, the probability of success at trial is at best 50 — 50. For instance, the parties acknowledge the uncertainties and risks in this case because of the lack of direction from the Eleventh Circuit and conflicting rulings among the district courts on the issues (Dkt. 55, pp. 2, 4).[1] Ms. Williams is confident Shellpoint's practice of sending welcome letters with misleading information to those who have received a bankruptcy discharge of their mortgage debt could be deceptive to the least

---

[1] *See Helman v. Bank of Am.*, 685 F. App'x 723, 727-28 (11th Cir. 2017); (unpublished) (concluding language in post-discharge mortgage statement that expressly stated debtor had no personal obligation to repay debt would not mislead least sophisticated consumer as attempt to collect debt in violation of FCCPA); *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015) (unpublished) ("A communication can have more than one purpose, for example, providing information to a debtor as well [as] collecting a debt."); *Hasbun v. Recontrust Co.*, 508 F. App'x 941, 942 (11th Cir. 2013) (reasoning that letter was informational and not demand for payment); *cf. Lilly v. Bayview Loan Serv., LLC*, No. 2:17-cv-345-FtM-99MRM, 2017 WL 4410040, at *4 (M.D. Fla. Oct. 4, 2017) (unpublished) (determining communications sent post-discharge of mortgage debt could be viewed by least sophisticated consumer as attempt to collect debt); *Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1309-11 (M.D. Fla. 2017) (discussing that letters demanding payment and highlighting result of nonpayment qualified as debt collection); *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, at *1, 15 (M.D. Fla. Aug. 16, 2016) (unpublished) (stating post-discharge mortgage statement was communication in connection with collection of a debt); *Leahy-Fernandez v. Bayview Loan Serv., LLC*, 159 F. Supp. 3d 1294, 1303 (M.D. Fla. 2016) (same).

sophisticated consumer (Dkt. 55, p. 4). However, Shellpoint was prepared with merit-based defenses and trial objections, which includes its argument that the welcome letters were sent for informational purposes (Dkt. 55, pp. 2, 4).

For an individual TCPA claim, a plaintiff may recover $500 for each violation and treble damages for willful or knowing violations. 47 U.S.C. § 227(b)(3). Ms. Williams alleges nine separate TCPA violations in the Amended Complaint and does not request treble damages (Dkt. 34, pp. 20-21). Shellpoint has agreed to pay Ms. Williams $3,500 for her TCPA claim (Dkt. 55, p. 11). Here, the range of possible recovery is zero to $500 per call for a total of $4,500, which is within the range of the settlement.

Plaintiff contends that discovery has revealed that her TCPA claim is potentially meritorious based on the facts and circumstances of her individual claim (Dkt. 48, p. 3). Although it denies violating the TCPA, Shellpoint has agreed to a settlement with Ms. Williams in the range of reasonable settlements for individual TCPA claims (Dkts. 47, ex. 1, p. 3; 48, pp. 16-17). At this stage of the proceedings, therefore, the settlement amount for Ms. Williams' individual TCPA claim appears to be fair, adequate, and reasonable.

13

As for the FDCPA and FCCPA claims, Shellpoint also denies its conduct violated these statutes but has agreed to recognize the claims and has assigned value to them (Dkt. 47, ex. 1, p. 3; 48, pp. 16-17).

The range of possible recovery for an FDCPA or FCCPA violation is from zero to $1,000 for each named plaintiff under each statute. *See* 15 U.S.C. § 1692k(a)(2)(B); Fla. Stat. § 559.77(2). For class damages, the FDCPA limits the aggregate to $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B).

The parties suggest that Shellpoint's net worth is an issue that would require resolution by litigation (Dkt. 55, p. 5). If considering the aggregate statutory maximum for a class of 976 members, it would amount to approximately $512 per person (Dkt. 55, p. 15; ex. 1, p. 3).

Depending on when the Welcome Letter was received, the parties agreed to settle on payment of either $250 or $350 per class member, instead of assessing the statutory damages limit of 1% of Shellpoint's net worth. This would total an approximate $271,250 payment to the class, according to Plaintiff's calculation (Dkt. 55, pp. 4-5).

In comparison, the court in *Prindle* approved $350 per class member for claims arising under the FDCPA for mortgage statements sent post Chapter 7 discharge. *See Prindle v. Carrington Mortg. Servs., LLC*, No.

14

3:13-cv-1349-J-34PDB (M.D. Fla. Dec. 1, 2017) (Dkt. 165).  Other courts

have awarded nominal statutory damages in such actions. *See, e.g.,*

*Palmer v. Dynamic Recovery Sols. LLC*, No. 6:15-cv-59-Orl-40KRS (M.D.

Fla. July 14, 2017) (Dkts. 90, 92) (approving approximate $17 damages

payment per class member); *Baez v. LTD Fin. Servs., L.P.*, No. 6:15-cv-

1043-Orl-40TBS (M.D. Fla. May 8, 2017) (Dkts. 123, 134) (awarding

approximately $1.45 per class member in FDCPA case); *Dauval v.*

*Preferred Collection & Mgmt. Servs., Inc.*, No. 8:11-cv-2269-T-27TGW

(M.D. Fla. Jan. 25, 2013) (Dkts. 70, 72) (awarding zero damages in

FDCPA jury trial to plaintiff who had filed Chapter 7 bankruptcy to

discharge debt at issue); *Elmore v. Ne. Fla. Credit Bureau, Inc.*, No. 3:10-

cv-573-J-37JBT (M.D. Fla. Sept. 27, 2011) (Dkts. 59, 62) (awarding $100

each for FDCPA and FCCPA violations).

Any remaining funds after payment to the class will cover the costs

of administration and beyond that, to the designated cy pres recipient,

FoolProof Foundation, which provides free financial literacy programs for

middle and high school teachers (Dkt. 58, ex. 1).

When examining the anticipated complexity, cost and duration of

litigation, this favors settlement as continuing to litigate may involve

additional discovery, dispositive motions, a contested class certification,

trial, appeal, and additional time expended by the attorneys (Dkt. 55, pp. 2, 6-7).  Another consideration is that no objections have been raised. Nor have any Class Members have opted out. and an adequate basis exists in the record to evaluate the Settlement (Dkts. 34, 47, ex. 1; 48; 55, ex. 1; 57).

At this stage of the proceedings, class discovery has been conducted, the Court granted in part Shellpoint's motion to dismiss, Ms. Williams filed an Amended Complaint, and the parties' full day of mediation resulted in a Settlement Agreement (Dkts. 33, 34, 42, 43, 47, 48; 55, p. 7).  Considering that the Settlement avoids the potential risks, costs, and delays in proceeding in this action and the stage of the proceedings, the Court concludes that the Settlement is a fair and reasonable resolution.

Moreover, attorneys' fees under the Settlement are to be paid separately from the Settlement amount paid to the Class Members (Dkts. 47, ex. 1; 55).  Further, Class Member relief is not conditioned on attorneys' fees being awarded by the Court, which further supports the adequacy and fairness of the Settlement (Dkts. 47, ex. 1; 55).

The process by which the settlement proceeds will be distributed to Settlement Class Members also supports approval of the Settlement. *See*

Fed. R. Civ. P. 23(e)(2)(C)(ii). Every Settlement Class Member who has
not opted out of the Settlement Class will automatically receive his or her
allocated settlement amount (which will be calculated on an equal basis
per Class Loan), within sixty days of the Final Settlement Date (Dkt. 47,
ex. 1, p. 13). Settlement Class Members do not need to submit a claim,
do not need to have a claim approved, and do not need to do anything
else to obtain their settlement check (Dkts. 47, ex. 1; 52, p. 13).

Finally, any Settlement Class Member who believed that he or she
had a viable claim had the right to opt out and pursue such a claim, along
with the individual statutory damages and attorneys' fees and costs
available to individual litigants under the FDCPA or the FCCPA (Dkt. 47,
ex. 1, pp. 11, 17-18). Thus, the likelihood of success and potential
recovery at trial measured against the complexity and expense of trial and
relief offered by the Settlement support final approval of the Settlement.

### 4.    The Settlement Treats Class Members Equitably.

The Settlement also treats Settlement Class Members "equitably
relative to each other." See Fed. R. Civ. P. 23(e)(2)(D). When Rule 23
was amended effective December of 2018, the committee noted that
Paragraph (D) is meant to draw attention to concerns of inequitable
treatment that may include "whether the apportionment of relief among

17

class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways." *See* Rule 23(e)(2)(D) advisory committee's note to 2018 amendment.

While the Settlement provides for two separate payment amounts, each is applied equally relative to the date the Class Member received the Welcome Letter (Dkts. 47, ex. 1, p. 8; 55). Further, the Settlement allows for only one payment to be made per Class Loan, which prevents disproportionate disbursements to multiple borrowers (Dkt. 47, ex. 1, p. 8).

In addition, the parties represent that Ms. Williams' individual TCPA damages claim was settled separately from the agreement reached on the class FDCPA and FCCPA claims, and that any Class Member may pursue an individual TCPA claim apart from the Settlement (Dkts. 47, 48, 55). Class Members were also notified that they could choose to opt out of the Settlement Class to pursue individual actions (Dkts. 47, 55, 57).

Further, the release is limited to claims arising from the specific facts giving rise to this action; namely, Settlement Class Members' receipt of communications after personal liability on the loan had been discharged by Chapter 7 bankruptcy (Dkt. 47, ex. 1, pp. 17-18; 55). Thus, the provisions of the Settlement are equitable relative to each class member.

### 5.    No Opposition to the Settlement.

A declaration by the Settlement Administrator states that the claims administration firm did not receive any opt-outs or objections to the class action settlement notice (Dkt. 55, ex. 1).  This weighs in favor of approval of the Settlement. *See, e.g., Bennett*, 737 F.2d at 987 n.10.

In sum, having considered the *Bennett* factors and those enumerated in Rule 23(e)(2), the Court approves the Settlement as fair, reasonable, and adequate.

## VI.  Incentive Fee Award and Settlement of TCPA Claim

The parties agreed to an incentive award of $2,000 to be paid to Ms. Williams (Dkt. 47, ex. 1, p. 9).  As the Class Representative, Ms. Williams prepared discovery responses, produced records, conferred with counsel, and participated in the mediation (Dkts. 48, p. 21, exs. 1, p. 7; ex. 2; 55, pp. 3, 8).  And, no Settlement Class Member has objected to the award (Dkt. 55, p. 7; ex. 1, p. 4).  This $2,000 incentive award is also within the statutory limit for each of her FDCPA and FCCPA claims. *See* 15 U.S.C. § 1692k(a)(2)(A); Fla. Stat. § 559.77(2).

Further, "[m]any circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23." *Muransky v. Godiva Chocolatier, Inc.*, Nos. 16-16486, 16-16783, --F.3d--, 2019 WL 1760292,

at *14 (11th Cir. Apr. 22, 2019) (citations omitted); *see Prindle*, No. 3:13-cv-1349-J-34PDB (Dkt. 165, pp. 8, 29) (approving $2,000 incentive payment); *N. Star Capital Acquisitions, LLC v. Krig*, No. 3:07-cv-264-J-32MCR, 2011 WL 65662, at *6 (M.D. Fla. Jan. 10, 2011) (approving $5,000 incentive award). However, "incentive awards must be supported by 'legitimate considerations' sufficient to 'dispel the cloud of collusion which such a settlement suggests.'" *Muransky*, 2019 WL 1760292, at *14 (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983)).

In light of Ms. Williams' efforts in this case and that the Class Settlement confers substantial benefits on Class Members, who have not objected to the incentive award, the Court finds that it is appropriate, reasonable, and not the product of collusion.

In addition, Shellpoint agreed to pay Mrs. Williams $3,500 in damages for her TCPA claim after negotiations at the mediation (Dkts. 47, ex. 1, p. 9; 48, ex. 1, pp. 6-7). Ms. Williams alleges that Shellpoint made nine separate calls to her cell phone (Dkt. 34, pp. 20-21). The TCPA allows for an award of $500 per violation. 47 U.S.C. § 227(b)(3).

Class counsel determined through discovery that the TCPA claim was not amenable as a class claim, but that Ms. Williams' individual claim had merit (Dkts. 48, ex. 1, pp. 6-7; 55, pp. 6, 11). Thus, the agreed upon

20

amount to be paid to Ms. Williams for her TCPA claim is within the statutory range allowed and is fair, adequate, and reasonable.

## VII.  Attorneys' Fees and Costs

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The FDCPA permits a prevailing plaintiff to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." *See* 15 U.S.C. § 1692k(a)(3).

Here, Shellpoint agreed to pay Class Counsel $61,150 in attorneys' fees and costs as part of the Settlement (Dkts. 47, ex. 1, p. 14; 55, p. 12). However, the Court "has an independent supervisory duty to assess the appropriateness of the fee award apart from any agreement reached by plaintiff and defense counsel." *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296 n.9 (11th Cir. 1999) (citation omitted).

Class Counsel states that "fee and expense negotiations were conducted at arm's-length after an agreement for the class had been reached." (Dkt. 55, pp. 12-13).  Class Council submitted lodestar calculations as follows: Janet Varnell (45.20 hours at $500 an hour); Brian Warwick (10.50 hours at $500 an hour); David Lietz (37.10 hours at $500

an hour); Karen Stroly (8.40 hours at $125 an hour) for a total of $47,450 (Dkt. 55, ex. 2, p. 8). In addition, Max Story submits he expended 64 hours at $450 per hour for a total of $28,800 (Dkt. 55, ex. 2, p. 9). In sum, the lodestar amounts to approximately 165 hours and $76,250.

After review, the hourly rates submitted are in line with prevailing market rates that have been approved for similar class claims in this District and thus appear reasonable. *See, e.g., Ioime v. Blanchard, Merriam, Adel & Kirkland, P.A.*, No. 5:15-cv-130-OC-30-PRL (M.D. Fla. May 16, 2016) (Dkts. 46, ex. 2; 48) (listing hourly rates of $350 to $650); *Rigney v. Livingston Fin., LLC*, No. 6:12-cv-617-Orl-37TBS, 2014 WL 12625790, at *9 (M.D. Fla. Mar. 6, 2014), *adopted by* 2014 WL 12633494 (M.D. Fla. Mar. 13, 2014) (discussing typical hourly ranges in this area from $350 to $450).

Taking into account the time and effort expended, complexity of the issues, the experience and expertise of Class Counsel, the result obtained for the Settlement Class, and the risks, the Court concludes that the attorneys' fees requested are reasonable and appropriate. *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). Thus, the Court will approve the $61,150 award in attorneys' fees and costs.

## VIII. Conclusion

Upon consideration of the above, the Court concludes that the Settlement is fair, reasonable and adequate. Thus, the Court finally approves the Settlement under Fed. R. Civ. P. 23. Accordingly, it is

**ORDERED:**

1.    Plaintiff's Amended Motion for Final Approval of Class Action Settlement and Approval of Attorney Fee Award (Dkt. 57) is **GRANTED**.

2.    The Court approves the payment of $2,000 to Joyce Fudge Williams as an incentive award. The Court also approves payment of the $3,500 award to Joyce Fudge Williams for the separate individual claim resolved pursuant to the Settlement.

3.    The Court approves the agreed attorneys' fees and expense award to Class Counsel in the amount of $61,150.

4.    The Settlement Class preliminarily certified by the Court on December 21, 2018 is hereby finally certified for settlement purposes only, as it fully satisfies all the applicable requirements of Rule 23 and due process. The Settlement Class is comprised of:

> All Florida consumers: (1) whose mortgage loans were secured by residential property located in Florida; (2) whose mortgage loan was service-released to Shellpoint with an effective date on or after May 18, 2015; (3) who received a Chapter 7 discharge of their personal liability on the mortgage debt prior to the effective date Shellpoint began servicing the loan; and (4)

who, after receiving a discharge, received a Welcome Letter in connection with that discharged mortgage debt in the same form as the communication attached to the class notice.

5.    The Court finally approves the terms of the Settlement as being a fair, reasonable, and adequate resolution of the dispute between the parties.

(a)    The Parties are directed to implement the Settlement according to its terms and provisions. The Parties are also directed to take all steps necessary and appropriate to provide the Settlement Class Members with the benefits to which they are entitled under the Settlement.

(b)    At the time that all checks have been paid to the Settlement Class Members and the time for cashing those checks has expired, and any costs of administration have been satisfied with remaining funds, any funds still remaining shall be payable as a cy pres award to:

**FoolProof Foundation**
516 Delannoy Avenue
Cocoa, Florida 32922
United States of America
+1 202 360-4512

6.    The terms of the Settlement and of this Final Order and Judgment shall be forever binding on Plaintiff, Shellpoint, and all Settlement Class Members, as well as their present, former and future

24

heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors. The terms of the Settlement and of this Final Order and Judgment shall have res judicata and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons or entities, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Settlement's Release.

7.    The Court hereby approves, incorporates and adopts the Release set forth in the Settlement.  The Release hereby is made effective as of the Final Settlement Date, and will forever discharge Shellpoint and the Released Parties of and from any liability to Plaintiff and the Settlement Class Members, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors, arising in whole or in part from the Released Claims as defined in the Settlement.

8.    Without in any way affecting the finality of this Final Order and Judgment, the Court expressly retains jurisdiction: (a) as to the administration, consummation, enforcement, and interpretation of the

25

Settlement, including the Release, and the Final Order and Judgment; (b) to resolve any disputes concerning settlement class membership or entitlement to benefits under the terms of the Settlement; and (c) over all Parties, including members of the Settlement Class, for purposes of enforcing and administering the Settlement and this Action generally, until each and every act agreed to be performed by the Parties has been performed in accordance with the Settlement.

9.    Neither this Final Order and Judgment, nor the Settlement, nor any other document referred to herein, nor any action taken to carry out this Final Order and Judgment, is, may be construed as, or may be used as an admission or concession by or against Shellpoint or the Released Parties as to the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability.  Entering into or carrying out the Settlement, and any negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to Shellpoint's denials or defenses, and shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the Settlement and this Final Order and Judgment; provided, however, that the Settlement and Final Order and Judgment may be filed in any action brought against or by

Shellpoint or the Released Parties to support a defense of res judicata,

collateral estoppel, release, waiver, good-faith settlement, judgment bar or

reduction, full faith and credit, or any other theory of claim preclusion, issue

preclusion or similar defense or counterclaim.

10.    Subject to the provisions of this Final Order and Judgment,

including the Court's retention of jurisdiction, this action (including all

individual and class claims presented) is hereby dismissed on the merits

and with prejudice, and without any other past or future fees, expenses, or

costs to any Party or Settlement Class Member.

11.    The Clerk is directed to terminate any pending motions as

moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __8th__ day of May,

2019.

HENRY LEE ADAMS, JR.
United States District Judge

Copies to:   Counsel of Record

27